# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

ASTA FUNDING, INC.,

                   Petitioner,

          v.

DAVID SHAUN NEAL, et al.,

                  Respondents.

_____

Civil Action No. 14-2495 (KM)

OPINION

## I. INTRODUCTION

This matter comes before the Court by way of a motion for fees and costs filed by Petitioner's attorneys (collectively "Counsel") [D.E. 57], and David Shaun Neal's ("Mr. Neal") motion to strike Petitioner's motion for fees [D.E. 61].[1]  Pursuant to Fed. R. Civ. P. 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument.   For the reasons set forth below, the Court grants Counsel's motion [D.E. 57], awards Counsel $694,174.07 in fees and $63,183.14 in costs, and denies Respondent's motion to strike [D.E. 61].

---

[1]   Asta seeks to recover fees and costs for the following: (1) the arbitration in *Asta Funding, Inc. v. New World Solutions, Inc., David Shaun Neal, and Robert F. Coyne, Esq.* (the "Arbitration"); (2) *Asta Funding v. Neal*, Civil Action No. 14-2495 (KM) ("Instant Action"); (3) *Neal v. Asta Funding, Inc.*, Civil Action No. 13-6981 (KM) ("DJ Action"); (4) *Coyne v. Asta Funding*, Civil Action No. 14-2475 (KM) ("Coyne I"); (5) *Coyne v. ASTA Funding*, Civil Action No. 14-3932 (KM) ("Coyne II"); and (6) *Neal v. Asta Funding*, Civil Action No. 14-3550 (KM) ("Vacate Action").   For the arbitration, Asta seeks to recover fees and costs for the period after January 31, 2014.   For the remaining cases, the application seeks to recover fees and costs from the inception of each case until December 31, 2016.

## II.   BACKGROUND

### A.  Relevant Facts

The District Court's June 30, 2016 Opinion addressing the parties' cross-motions for summary judgment thoroughly set forth the factual background and legal issues in this matter and the related actions.   D.E. 24.   Because the Court writes for the parties' benefit, it sets forth only the facts relevant to the current motions.   Mr. Neal provided information technology services to Asta Funding Inc. ("Asta").   Opinion of U.S. District Judge Kevin McNulty, June 30, 2016, D.E. 24, at 2 ("McNulty Opin.").   When this relationship began, Mr. Neal provided these services through Bach Consulting, an entity owned by Robert F. Coyne ("Mr. Coyne").  *Id.*   In 2007, Mr. Coyne discontinued use of Bach Consulting and formed NWS with Mr. Neal.  *Id.* Mr. Neal continued to provide information technology services for Asta through NWS, pursuant to an agreement between NWS and Asta that contained an arbitration provision.  *Id.*   There are six interrelated actions arising from these business relationships, which are the subject of Petitioner's instant motion for attorneys' fees.[2]  *Id.*

In its initial action, *Asta Funding, Inc. v. New World Solutions, Inc., David Shaun Neal, and Robert F. Coyne, Esq.* (the "Arbitration"), Asta sought arbitration against NWS, the consulting company owned by Mr. Neal and Mr. Coyne, for breach of contract and unjust enrichment pursuant to an arbitration clause in the Information Technology Services Agreement between Asta and NWS.   On August 7, 2013, Asta filed an additional Supplemental Statement

---

[2]   There are at least an additional two actions pending between these same parties, *Neal v. Asta Funding, Inc., et al.*, Civ. No. 13-3438 (KM), and *Neal v. Asta Funding, Inc., et al.*, Civ. No. 13-4814 (KM).   The Court stayed these cases pending the outcome of the arbitration proceedings, the applications to confirm/vacate any arbitration award, and the declaratory judgment action.

of Claim against NWS, adding claims for fraud, conversion, trespass and violations of the New Jersey Consumer Fraud Act ("CFA"), the Federal Computer Fraud and Abuse Act ("CFAA") and the New Jersey Computer Related Offenses Act ("NJCROA"). Asta also moved to join Mr.Coyne and Mr. Neal based on the claims asserted in the Supplemental Statement of Claim. *Id.* However, the arbitrator denied Asta's request to join both Mr. Neal and Mr. Coyne. Asta then initiated a second arbitration action against Mr. Coyne and Mr. Neal. The arbitrator consolidated the two arbitrations on October 16, 2013, upon determining that Mr. Coyne and Mr. Neal were both personally bound by the arbitration provision.

On November 18, 2013, Mr. Neal initiated a Declaratory Judgment action ("DJ Action"), *Neal v. Asta Funding, Inc.*, Civil Action No. 13-6981 (KM), requesting a judgment that he was not personally bound by the arbitration provision at issue. The Arbitration and DJ actions continued in tandem. *Id.* On June 26, 2013, the arbitrator issued Prehearing Order 13 (Protective Order I), which enjoined NWS and Mr. Neal from disclosing Asta business information, pursuant to the Confidentiality Covenant contained in the Information Technology Services Agreement. Mr. Neal stated he would not respect Protective Order I. On August 6, 2013, the arbitrator issued Prehearing Order 15 (Protective Order II), again ordering that Mr. Neal not disclose Asta business information and deliver all relevant information to Asta within five days of the order. Again, Mr. Neal refused to comply with the order. After the arbitration hearing from January 7, 2014 to January 24, 2014, the arbitrator issued Hearing Order 3, which enjoined all parties from disclosing confidential information. The arbitrator concluded that Respondents had Asta's electronic information and directed Respondents to give their computers to the Court for forensic inspection and imaging. On March 14, 2014, Judge McNulty adopted

the protections set forth by the arbitrator's protective order.

On April 2, 2014, the arbitrator issued the Non-Confidential Summary Award ("Summary Award") and Confidential Final Award ("Confidential Award"). Certification of Steven Adler, Feb. 1, 2017, Ex. 1, D.E. 57-3. In pertinent part, the arbitrator ruled as follows:

> 10. ORDERED, that ASTA is entitled to an award of reasonable attorneys' fees and costs on its confidentiality, CFA [New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*], CFAA [Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*,] and NJCROA [New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38-1A *et seq.*] claims against all Respondents jointly, severally and/or in the alternative, in the amount of $552,897.00 not including fees associated with the federal actions referenced in the Confidential Final Award, through January 31, 2014; and it is further

> 11. ORDERED, that ASTA is entitled to an award of the costs to date incurred by ASTA, plus $10,000 in investigation costs, but excluding the fees of the Arbitration (which are dealt with below), totaling $25,370.60, against all Respondents jointly, severally and/or in the alternative; and it is further

> 12. ORDERED, that ASTA is entitled to an award against all Respondents, jointly, severally and/or in the alternative, of reasonable attorneys' fees and costs, incurred in this arbitration after January 31, 2014 in connection with its efforts to enforce the Hearing Orders, and to confirm this Award and to collect any judgment; and such amounts may be determined by a Court of competent jurisdiction. . . .

*Id.* ¶¶10-12.

In December 2013, Mr. Coyne filed a complaint in the United States District Court for the Central District of California, seeking both a declaratory judgment that he was not personally bound by the arbitration provision, and an order enjoining the arbitration. Asta successfully moved to transfer venue from the Central District of California to this Court. *Coyne v. Asta Funding*, Civil Action No. 14-2475 (KM), D.E 30, Dec. 20, 2013 ("Coyne I"). The District Court dismissed this litigation on July 21, 2016.

On April 21, 2014, Mr. Coyne filed another complaint in the United States District Court

for the Central District of California.   This complaint demanded that the District Court vacate the arbitrator's Jurisdiction Award, which had determined that the arbitrator could extend his jurisdiction to Mr. Neal and Mr. Coyne.   Again, Asta successfully moved to transfer the action to this Court.   *Coyne v. ASTA Funding*, Civil Action No. 14-3932 (KM), D.E 1, Apr. 21, 2014 ("Coyne II").   The District Court dismissed this action on June 30, 2016 in accordance with the Opinion and Order that Judge McNulty entered in the DJ Action, the Instant Action, Coyne II and the Vacate Action, confirming the arbitrator's award.

In June 2014, Mr. Neal filed *Coyne v. Asta Funding*, Civil Action No. 14-3550 (KM) ("Vacate Action"), in which he requested that the arbitrator's award be vacated.   Asta moved to dismiss the action.   The Vacate Action was later dismissed on June 30, 2016.

On April 17, 2014, Asta filed the instant action by way of a Petition to Confirm the Arbitration Award.   Asta filed the petition in accordance with Judge McNulty's April 10, 2014 Order in the DJ Action, which had directed the parties to file any applications to confirmation of the arbitration award, or to vacate or modify it, in a new action, which would be consolidated for discovery with the DJ Action.   In the petition, Asta sought entry of an order: (1) entering a judgment in its favor for the amount set forth in the Summary Award; (2) compelling Respondents to comply with Section 14 of the Summary Award, which required Respondents to return Asta's documents and property; (3) awarding Asta costs and fees, including reasonable attorneys' fees; and (4) providing for such other relief as the court may deem just and proper. The District Court granted the petition on June 30, 2016, when the Court confirmed the arbitrator's award.

The District Court's June 30, 2016 Opinion and Order confirmed the Summary Award

and Confidential Award, as well as the Partial Final Award ("Jurisdiction Award") dated March 5, 2014. Opinion and Order, June 30, 2016, D.E. 24-25. The District Court granted summary judgment in Asta's favor in the Instant Action and dismissed the DJ Action, Coyne II, and the Vacate Action.[3] McNulty's Opin. and Order, D.E. 24, 25. The Court also granted Asta's motion for summary judgment and denied Mr. Neal's and Mr. Coyne's cross-motion for summary judgment in the DJ Action. *Id.* Accordingly, the District Court entered Judgment in Petitioner's favor for "$3,243,860.83, comprising (1) $2,971,234.99 as against all Respondents, (2) $230,485 as against Mr. Neal and NWS only, and (3) $42,140.94 for administrator and arbitrator fees as against all Respondents . . . ." Judgment, June 30, 2016, D.E. 26.Thereafter, on July 21, 2016, the Court issued an Order dismissing Coyne I. Civil Action No. 14-2475 (KM), D.E 47, July 21, 2016.

On February 1, 2017, Asta filed a motion seeking attorneys' fees and costs.[4] Pet'r's Br., D.E. 57, at 1. Respondent Mr. Neal initially opposed Asta's motion solely by filing a motion to strike on February 21, 2017.[5] Resp't Mot., D.E.61, at 1. However, in order to ensure that

---

[3] Respondents moved for reconsideration and for relief under Federal Rule of Civil Procedure 60(b) from the District Court's June 30, 2016 Opinion and Order. See Motion To Strike Pursuant to FRCP 60(b), May 1, 2017, D.E. 64; Motion for Reconsideration, June 12, 2017, D.E. 68. The District Court denied those applications on July 25, 2017 and July 26, 2017. D.E. 71-72.

[4] Asta filed its initial application for attorneys' fees and costs on July 28, 2016. Application for Attorneys' Fees and Costs, July 28, 2016, D.E. 27. However, this Court determined that the motion was deficient, and denied that Petition without prejudice to Petitioner's right to refile a properly supported motion for fees and costs. Order, Nov. 4, 2016, D.E. 42.

[5] All references to Respondent's motion to strike and Respondent's opposition to Petitioner's motion for fees are to Mr. Neal. Mr. Coyne has neither filed opposition to Petitioner's motion for fees and costs, nor joined in Mr. Neal's Motion.

Respondents were afforded a full and fair opportunity to be heard on Petitioner's application, this Court, on August 3, 2017, entered an Order providing Mr. Neal the opportunity to submit any additional opposition to Petitioner's motion for attorneys' fees. Order, Aug. 3, 2017, D.E. 73. Mr. Neal submitted a brief in further opposition to Petitioner's motion.[6]  Brief in Opposition, Aug. 25, 2017, D.E. 80.   Petitioner filed a reply in further support of its fee application.   Pet'r's Additional Reply Br., Aug. 25, 2017, D.E. 74.   The Court has considered all of those submissions.

## III.  ARGUMENTS

### A. Petitioner's Motion for Attorneys' Fees

Asta seeks a lodestar award of $741,201.57 in fees and $63,183.14 in costs that were incurred during the latter part of the arbitration and in the five related actions, set forth above in footnote 1, from the inception of each action until December 31, 2016.[7]  Pet'r's Br. at 3.   Asta asserts that it is entitled to this award pursuant to the CFA, the CFAA, and the NJCROA, which include a cost shifting provision that allows injured parties to recover costs and fees against a wrongdoer.   *Id.* at 1.   Pursuant to the arbitration clause signed by the Respondents, Asta initiated arbitration against NWS in 2012.   *Id.*   The arbitrator found in favor of Asta and thus awarded Asta more than $3 million in damages against NWS, Mr. Neal and Mr. Coyne.

---

[6]  The docket reflects that Mr. Neal's opposition was filed twice, first on August 25, 2017 [D.E. 80], and again on August 30, 2017 [D.E. 78].   It is the same opposition brief.   For the sake of clarity, the Court herein will refer to the earlier filing date of August 25, 2017 [D.E. 80].

[7]  Petitioner indicates that while the present motion is limited to those costs and fees incurred through December 31, 2016, "Asta is entitled to recover its ongoing expenses arising from its efforts to enforce the Arbitrator's Orders and Awards, including relating to Mr. Neal and Mr. Coyne's Appeal to the Third Circuit [ECF 51 and 52] from the Court's June 30, 201[6] Order, and reserves its right to seek such costs as a later date."   Pet'r's Reply Br., D.E. 62, at 1.

Summary Award, Apr. 2, 2014.   Judge McNulty confirmed the award issued by the arbitrator in

his June 30, 2016 Opinion and Order.   McNulty Opin. and Order, D.E. 24 & 25, June 30, 2016.

Asta contends that pursuant to Judge McNulty's Opinion and Order in the Instant Action, which

confirmed the arbitrator's award, it is entitled to costs and fees, including reasonable attorneys'

fees.   Pet'r's Br. at 3.

### B.  Declarations in Support of Fee Application

Asta seeks to recover costs related to expert fees, transcription and court reporting

services, and Westlaw legal research.   Certification of Steven I. Adler, Esq ("Adler Cert."), D.E.

57-2, Feb. 1, 2017, ¶ 42.   The fees requested consist of $715,086.07 for services provided by

Mandelbaum Salsburg, P.C.[8] ("Mandelbaum") and $26,160.50 for services provided by

Greenberg Glusker Fields Claman & Machtinger LLP[9] ("GGFCM").   *Id.* ¶ 44.   Mandelbaum

expended 1,793.20 hours during the course of the litigation which is the subject of the motion for

attorneys' fees, through December 30, 2016.[10]   GGFCM expended 68.9 hours.   *Id.*

During litigation, Asta hired Palisades Compliance, LLC ("Palisades") and The Sylint

Group, LLC ("Sylint") as expert witnesses.   *Id.* ¶¶ 52-55.   Palisades was hired to review

evidence and to testify regarding the fraudulent conduct committed by the Respondents related to

the sale of counterfeit Oracle software and support services.   *Id. ¶ 52.*   For their services

---

[8]   Mandelbaum has represented Asta in all of these matters from the commencement of litigation until the present.   Pet'r's Br. at 14.

[9]   GGFCM was retained by Asta to serve as local counsel in connection with Coyne I and Coyne II.   Pet'r's Br. at 12.

[10]   Asta reserves its right to seek additional fees at a later date in connection with its efforts to enforce the orders and award issued in the arbitration.   Pet'r's Br. at 1, n.2.

Palisades was paid $7,875. *Id.* ¶ 54. Further, Sylint was hired to help establish Respondents' abuses of the CFA, CFAA and NJCROA. *Id.* ¶ 53. Sylint was paid $30,458 for its services and was reimbursed $1,776.27 in travel costs. *Id.* ¶ 54. In total, Asta paid $40,109.27 in expert costs. *Id.* ¶ 55.

Vertitext Legal Solutions ("Veritext") provided court reporting and transcription services during the arbitration hearing days. *Id.* ¶ 56. In total Asta paid $9,115.78 for Vertiext's services during the litigation. *Id.*

In preparation of and during litigation, Westlaw was used to do necessary legal research. Certification of Lauren X. Topelsohn ("Topelsohn Cert."), D.E. 57-4, Feb. 1, 2017, ¶ 16. Two accounts were used to bill for the research performed. *Id.* Ms. Topelsohn, co-lead counsel for Asta in this case, used her own Westlaw account and was later reimbursed. *Id.* Ms. Topelsohn pays a flat monthly fee to Westlaw, which she allocates among all her clients according to the research required for each litigation. *Id.* ¶ 17. The other Westlaw fees relate to the use of Mandelbaum's Westlaw license. *Id.* Similarly, this account pays a flat monthly rate and is then allocated among clients based on the amount of research done for their litigation. *Id.* The cost of legal research performed in all six related actions amounts to $13,958.09. *Id.*

## C. Respondent's Opposition

As noted above, Mr. Neal opposes Asta's motion for fees and costs in both his motion to strike and in the opposition that he filed on August 25, 2017. In the motion to strike, Mr. Neal does not challenge the amount of fees and costs Petitioner seeks. Instead, his opposition alleges procedural defects in Petitioner's motion. First, Mr. Neal argues that he was not properly served with the Petitioner's motion for fees and costs under Local Civil Rule 54.1, because Asta

submitted documents only via ECF and Respondent had not consented to ECF service.   Resp't

Mot. at 3.   Relatedly, Mr. Neal alleges that Asta falsely swore that service had been

accomplished in accordance with the Court's Order.   *Id.*   Second, Mr. Neal contends that Asta

did not comply with Local Civil Rule 54.1 because Asta did not file a notice of motion within

thirty days of entry of judgment.   *Id.* at 4.   Third, Mr. Neal argues that Neil Deutsch, a lawyer

who provided a letter to Asta on prevailing attorneys' fees rates, breached his fiduciary duty to

Mr. Neal, who was his former client on the same matter.   *Id.* at 5.   Taking this letter as void,

Mr. Neal then contends that Asta did not adequately comply with the Court's Order to provide

letters from three attorneys relating to the attorney fee rates.   *Id.*

In the opposition filed on August 25, 2017, Mr. Neal offers four reasons why the Court

should generally deny Asta's motion.   Resp't Opp. at 2-3.   First, Mr. Neal argues that the

arbitrator exceeded his authority in awarding fees because the contract between Asta and NWS

did not provide for an award of fees, and under New Jersey law, "each party bears their own

attorney fees."   *Id.* at 2.   Second, Mr. Neal contends that Asta seeks an award of fees in other

unrelated actions where fees have not been awarded, although Mr. Neal does not specify the

unrelated actions to which he refers.   *Id.*   Third, Mr. Neal contends that Asta has committed

fraud upon the Court by furnishing testimony that Asta knew to be false.   *Id.* at 2-3.

Specifically, Respondent argues that while Asta maintained it received no valuable service from

Sun Interactive Systems ("Sun"), there are many emails demonstrating that Asta and Sun worked

closely together.   *Id.* at 2.   Additionally, Mr. Neal asserts that Asta's contention that he stole

emails was false because Asta's own emails show that Asta directed Mr. Neal to forward his

work emails to his personal email address so that he could render assistance around the clock.

*Id.* at 3.   Fourth, Mr. Neal contends that Asta consistently delayed proceedings by filing baseless motions and failing to adhere to the Federal Rules of Civil Procedure or the Local Civil Rules, and that Asta should not be compensated for those derelictions.   *Id.*   However, like his assertion that Asta seeks fees and costs for unrelated actions, Mr. Neal provides little specific information to identify the baseless motions and rules violations.

### D.  Petitioner's Reply Papers

In response to Mr. Neal's motion to strike, Asta asserts that it made numerous efforts to serve the Respondents.   Resp't Opp. at 6.   Regarding Neil Deutsch's submission on prevailing rates, Asta represents that it did not know of Neil Deutsch's previous relationship with the Respondents, and thus withdraws its reliance on Deutsch's certification.[11]   *Id.* at 7.

Asta's reply brief in further support of its motion for fees addresses the arguments in Mr. Neal's August 25, 2017 opposition.   Asta contends that Mr. Neal's first argument--*i.e.*, that the arbitrator exceeded the scope of authority in awarding attorney fees--is not a challenge to Asta's fee application but instead Mr. Neal's fourth attempt at challenging the merits of the Arbitrator's award.   Pet'r's Additional Reply Br., at 1-3.   Asta further argues that the District Court rejected that challenge in its June 30, 2016 decision, and again when the District Court denied Mr. Neal's motion for reconsideration.   *Id.* at 2.   Asta contends that Mr. Neal's second argument—*i.e.,* that Asta seeks fees for unrelated actions where no fee was awarded—also impermissibly challenges the substance of the Arbitration Award and the arbitrator's jurisdiction.   *Id.* at 3.   Asta also

---

[11]   Asta also observes that the Court did not order it to produce letters from attorneys on prevailing rates, and instead suggested such letters would be "helpful."   Moreover, Asta emphasizes that Respondents have not addressed any of Petitioner's original arguments raised in the motion for fees.

argues that the fees and costs it seeks all were incurred in the arbitration after January 31, 2014, this matter and the four related matters, in accordance with the Arbitration Award. *Id.* Asta argues that Mr. Neal's third point—*i.e.*, that Asta presented false testimony—similarly seeks to challenge the merits of the Arbitration Award, and has no basis in fact. *Id.* at 4-5. Finally, Asta disputes Mr. Neal's assertion that Asta protracted the litigation and its own fees by filing baseless motions and violating the rules, pointing out that Mr. Neal does not even specify the motions or alleged rules violations. *Id.* at 5.

## IV. DISCUSSION

### A. Respondent's Motion to Strike

The Court first addresses the arguments raised in Mr. Neal's motion to strike. Mr. Neal's service challenge under Local Civil Rule 54.1 is unavailing, for two reasons. First, Local Civil Rule 54.1(a) applies to a motion for taxable costs. Local Civil Rule 54.2 applies to actions where, as here, "a counsel fee is allowed by the Court or permitted by statute." L. Civ. R. 54.2(a). Rule 54.2 specifically provides that the party seeking fees must file the motion "within 30 days of the entry of judgment or order, unless extended by the Court." Id. Asta complied with those provisions. It filed its initial application on July 28, 2016, and therefore within the thirty-day window under Rule 54.2.[12] Although the Court denied the motion as deficient by

---

[12] Asta acknowledges that it served the initial motion on NWS, which is not a party to the instant action, by mail directed to Mr. Neal. Certificate of Service, D.E. 27-2. Asta mistakenly believed that Respondents received ECF notification of filings in this matter because they had received such notifications in related matters. Reply Certification of Steven Adler, D.E. 57-2, ¶¶14-15. Therefore, Asta did not mail copies of the initial motion to Respondents. Id. Asta sought leave of the Court to effect proper service, and proposed that the Court adjourn the return date to allow Respondents to respond. D.E. 32. This Court granted the application on September 7, 2016. D.E. 38. By that time, Asta had already served the initial motion on Respondents via Federal Express.

Order on November 4, 2016, D.E. 42, it granted Asta leave to refile the motion, upon completion of a telephone conference with the parties to address several related issues. *See* Order, Nov. 4, 2016, D.E. 42. This Court held that telephone conference with the parties on January 9, 2017, after which it ordered Asta to refile the motion by February 1, 2017, to refile its motion. *Id.* Asta filed the present motion for fees and costs on February 1, 2017. Accordingly, the Court concludes that Asta has complied with the filing deadline.

Second, Mr. Neal challenges Asta's service of the instant motion. He argues that the certificate of service filed along with the motion on the Court's docket indicated that that service was effected by overnight mail on February 1, 2017. However, Mr. Neal avers, Federal Express did not actually ship it until February 2, 2017, and he did not receive it until February 3, 2017. Resp't Mot. at 2. Citing no legal authority, Respondent argues that the motion is "jurisdictionally defective" because it was not served in a timely manner and must be dismissed. *Id.* at 3.

Asta concedes that it did not send out the motion on February 1, 2017, but argues that Steven Adler, Asta's co-lead counsel, caused the motion to be served on February 1, 2017.

_____

To the extent Mr. Neal contends that Asta's error in service of the initial motion is fatal to its fee application, that argument is not well taken. First, the Court granted Asta leave to re-serve the motion once Asta realized that Mr. Neal and Mr. Coyne were not receiving ECF notifications, and effected service within the timeframe of the Court's September 7, 2016 Order. To that point, it bears noting that although Local Civil Rule 54.2 requires that a fee application be filed within thirty days from entry of the underlying judgment or order, it contains no specific provision by which service must be made. Second, Mr. Neal can point to no prejudice from the error. He received the motion, had a full opportunity to respond to it, and in fact responded to it by filing his initial motion to strike Asta's fee application [D.E. 31]. Third, to the extent Mr. Neal challenges service of the initial application, the Court's November 4, 2016 Order, which denied Asta's initial motion without prejudice to refile it, rendered that motion moot.

Pet'r's Reply Br. at 8.   In fact, Federal Express took possession of the motion papers for delivery on February 2, 2017.   Reply Certification of Steven I. Adler, March 15, 2017, D.E. 62-1, ¶¶ 33-35.   Mr. Adler explains that by the time counsel counsel completed and filed the application on February 1, 2017, Federal Express had already completed its last pick-up for that day, and therefore took the motion package the following day for delivery.   *Id.*   Accordingly, under Federal Rule of Civil Procedure 5(b)(2), service of the motion was effected on February 2, 2017, not February 1, 2017.   *See* Fed. R. Civ. P. 5.2(b)(2)(C), (F) (providing that service is complete upon mailing or "when the person making service delivers it to the agency designated to make delivery").

Mr. Neal points to no legal authority for the proposition that service on February 2, 2017 renders the fee application defective, nor does the Court's own research disclose any.   It did not violate either Rule 5 or the Court's January 9, 2017 Order, D.E. 49, which required Asta to file the motion by February 1, 2017 and serve it on Mr. Neal via overnight mail.   Nor did it violate Local Civil Rule 54.2, which, as noted above, sets a thirty-day limit to file the motion but imposes no deadline to serve it.   Most importantly, Mr. Neal has not, and cannot, allege any prejudice resulting from Asta sending the motion overnight via Federal Express on February 2, 2017, instead of February 1, 2017.   Mr. Neal has had a full and fair opportunity to respond to the motion.   He did not seek additional time to respond because he received it on February 3rd.   To the contrary, Mr. Neal filed the cross-motion to strike on February 21, 2017, more than a week before its due date of March 1, 2017.   Moreover, the Court afforded Mr. Neal a further opportunity to oppose the fee application in its August 3, 2017 Order, D.E. 73.   Mr. Neal took advantage of that opportunity, and submitted an additional opposition brief, D.E. 80.   The Court

has considered all of Mr. Neal's submissions in adjudicating both Asta's fee application and Mr. Neal's motion to strike. Accordingly, the Court will deny Mr. Neal's motion to strike.[13]

### B. Mr. Neal's Opposition to Asta's Motion for Attorneys' Fees and Costs

Mr. Neal's additional arguments in his August 25, 2017 opposition brief are readily dispatched. The first three arguments fail because they plainly challenge the substantive merits of the Arbitrator's Award. His argument that the arbitrator exceeded his authority in issuing the award plainly challenges the substantive merits of the arbitrator's award, as well as the District Court's confirmation of the award. As such, that argument fails.

Mr. Neal's next point consists of the following: "ASTA's attorneys appear to include hours spent on cases not currently before this Court. [A]ny of those fees should be denied as this Court is without jurisdiction to award them." Respondent Neal's Opp. Brief, Aug. 25, 2017, D.E. 80, at 2. That is the entirety of the argument. Mr. Neal completely fails to specify what those other matters are, much less explain the basis for his assertion that those fees are included in the pending application.

To the extent Mr. Neal challenges the fee application insofar as it also seeks fees and costs in the DJ Action, Coyne I, Coyne II, and the Vacate Action, that argument fails. In the Summary Award and Confidential Award, the arbitrator concluded that Asta is entitled to recover its fees and costs incurred in the arbitration after January 31, 2014 and in actions "to confirm the Award and to collect any judgment." Summary Award and Confidential Award, attached as Ex. 1 to Certification of Steven Adler, Feb. 1, 2017, D.E. 57-3, ¶12. The record

---

[13] As noted earlier, Asta withdrew the certification of Neil Deutsch after Mr. Neal alleged that Deutsch had previously represented Mr. Neal. Accordingly, this argument is moot.

demonstrates that those actions derived from Mr. Neal's and Mr. Coyne's efforts to invalidate the arbitrator's jurisdiction and to vacate the Arbitration Award. In the DJ action, Mr. Neal sought a declaration that the arbitration provision at issue did not personally bind him. In Coyne I, Mr. Coyne similarly sought a declaration that the arbitration provision did not personally bind him, and also sought to enjoin the arbitration itself. In Coyne II, Mr. Coyne sought to vacate the arbitrator's jurisdiction award. And in the Vacate Action, Mr. Neal sought to vacate the arbitrator's award. It is beyond dispute that those actions directly challenged the arbitration award, and directly implicated Asta's efforts to confirm the arbitration award. Accordingly, this argument is without merit.

Finally, Mr. Neal argues that Asta itself has protracted these proceedings with baseless motions and violations of the Federal Rules of Civil Procedure. That argument finds scant support in the record. The Arbitration Award itself and the District Court's June 30, 2016 decision and Judgment confirmed the arbitration award, dismissed the DJ Action, Coyne II, and the Vacate Action, and entered judgment in Asta's favor for $3,243,860.83, including: (1) $2,971,234.99 against all Respondents, (2) $230,485 against solely Mr. Neal and NWS, and (3) administrative and arbitrator fees as to all Respondents of $42,140.84. Judgment, June 30, 2016, D.E. 26. In view of the District Court's June 30, 2016 decision and judgment, Mr. Neal's assertion that Asta's motions were baseless rings particularly hollow.

Second, the argument is fatally vague as to the allegedly baseless motions or rules violations to which he refers. The only example provided alleges that Asta twice attempted to seal a document already in the public domain. Resp't Opp. at 3. Asta argues that Mr. Neal fails to provide any specific information as to the filing to which he refers, or provide any

additional examples.

The Court's own inquiry into the extensive records of the actions at issue discloses two instances in which Asta attempted to seal documents that Neal had already filed on the public docket.  Although Mr. Neal is correct that the Court denied the sealing motions, his representation as to why the Court denied the motions is inaccurate.  In fact, the Court denied the applicationd because Asta had failed to comply with the requirements of a motion to seal under Local Civil Rule 5.3(c).  Both motions were filed in the DJ Action, Civil Action No. 13-6981 (KM), D.E. 71 and 100.  Asta made the first motion as part of a much larger motion to consolidate the related actions and for a restraint and sanctions against Mr. Neal.  D.E. 71.  The Court denied the motion because Asta had failed to attach the letters it sought to seal, failed to identify what portions of those letters it sought to seal, failed to identify the clearly defined and serious injury it would sustain if the relief was not granted, failed to explain why a less restrictive alternative was not available, and failed to submit proposed Findings of Fact and Conclusions of Law.  D.E. 97.  As such, the motion failed to comply with Local Civil Rule 5.3.

Accordingly, as to the first unsuccessful motion to seal, the Court will deduct a portion of the attorney's fees sought by Asta.  Precise calculation of the time spent specifically on the sealing application is elusive.  The motion to seal was part of a much larger motion to consolidate and for sanctions, and the billing records do not differentiate the time spent on discrete parts of the overall application.  Therefore, in an abundance of caution, the Court will deduct ten (10) hours from the hours charged.[14]

---

[14]   The billing records indicate that both Mr. Adler and Ms. Topelsohn spent considerable time on the overall application, and do not specify who worked specifically on the motion to seal that was part of that application.  But because those records reflect that Ms. Topelsohn was largely

The second unsuccessful motion was Asta's renewed application to seal the letters which were the subject of D.E. 71. Asta filed this second motion on January 23, 2015. D.E. 100. The Court denied this application because Asta failed to submit proposed Findings of Fact and Conclusions of Law, failed to identify the clearly defined and serious injury that would result if the letters were not sealed, and failed to explain why the Court should seal a letter which had been filed on the Court's public docket over a year ago. D.E. 114. The Court will deduct the amount of fees requested by Asta for this application.

It appears from a review of the billing records that Ms. Topelsohn billed approximately 18 hours in preparing and filing the motion to seal and Asta's reply brief in further support of the sealing application. Therefore, the Court will reduce Asta's total billed hours for the two unsuccessful motions to seal by 28 hours. During calendar years 2014 and 2015, Ms. Topelsohn's hourly rate was $425. Accordingly, the Court will reduce Asta's requested fees for failure to file successful motions to seal by a total of $11,900.

### C. Motion for Attorneys' Fees and Costs

The Court having rejected Mr. Neal's opposition to Asta's application for fees and costs, it is clear that Asta is entitled to an award for those fees and costs. As set forth above, in the Summary Award and Confidential Award, the arbitrator concluded that Asta could recover its fees and costs incurred in the arbitration after January 31, 2014 and in its efforts "to confirm the Award and to collect any judgment." Summary Award and Confidential Award, attached as Ex. 1 to Certification of Steven Adler, Feb. 1, 2017, D.E. 57-3, ¶12. As discussed above, that award

---

responsible for drafting the overall application, and that she drafted the renewed application to seal, the Court will deduct the hours from her total.

includes the attorneys' fees and costs incurred in the DJ Action, Coyne I, Coyne II, and the Vacate Action, as well as the instant action.

The District Court confirmed the Arbitration Award on June 30, 2016. Opinion and Order, June 30, 2016, D.E. 24-25. Specifically, the District Court confirmed the Jurisdiction Award, the Summary Award, and the Confidential Award. In so doing, the District Court found that the arbitrator appropriately construed the arbitration agreement, and determined the amount of damages pursuant to the law and the AAA Commercial Arbitration Rules. Opinion, D.E. 24, at 24. Under the AAA Commercial Arbitration Rules, an arbitrator is permitted to take "whatever interim measures he or she deems necessary, including injunctive relief." *Id.* The arbitrator, as set forth in the Summary Award, found that Asta was entitled to reasonable attorneys' fees and costs incurred in the arbitration for seeking enforcement of the Hearing Orders after January 31, 2014. Pet'r's Br. at 10. Based on these findings, Judge McNulty confirmed the arbitrator's Pre-Order Hearings and ordered the fees and costs to be granted. *Id.*

### i. Attorneys' Fees

Having decided that an award of attorneys' fees and costs is appropriate in this matter, the Court must determine is the reasonableness of the amount requested by Asta. "The starting point for determining any reasonable fee is to calculate a 'lodestar' amount; that is, the number of hours reasonably expended multiplied by a reasonable hourly rate." *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998). Once determined, the lodestar is presumed to be the reasonable fee. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). When calculating the lodestar amount, courts conduct a three-step inquiry: (i) decide a reasonable hourly rate, and multiply that rate by (ii) the number of hours the attorney reasonably expended,

and (iii) alter the total amount, if necessary.  *See J&J Snack Foods*, Civil Action No. 00-6230 (JBS), 2003 WL 21051711, at *6 (D.N.J. May 9, 2003).

Generally, the party seeking a fee award has the initial burden of proof.  *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).   Although courts have considerable discretion to award fees, courts cannot decrease fee awards "based on factors not raised at all by the adverse party."  *J&J Snack Foods*, 2003 WL 21051711, at *6.   Nonetheless, courts may adjust the lodestar if it is unreasonable based on the results of the case.  *See Rode*, 892 F.2d at 1183.  Typically, lodestar adjustments occur "for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims."  *Id.*

### a.  The Reasonable Hourly Rate

Prevailing market rates in the legal community usually set the reasonable hourly rate.  *See AT & T Corp. v. JMC Telecom, LLC*, No. 99-2578, 2005 WL 2086194, at *3 (D.N.J. Aug. 26, 2005) (explaining that the prevailing party satisfies this burden by "submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience.").   Under the "forum rate rule," out-of-state attorneys obtain the hourly rate "prevailing in the forum in which the litigation is lodged."  *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 493 (D.N.J. 1998) (internal citations and quotations omitted).   If the prevailing party sets forth the reasonable hourly rate, then the losing party may contest that rate with evidence in the record.  *See J&J Snack Foods*, 2003 WL 21051711, *7.   The court, however, must award fees to the prevailing party at the requested hourly rate if, as here, the losing party submits no contradictory evidence.  *See id.*

At the outset of this analysis, the Court notes the hourly rates that counsel seeks.

The billing rates for Mr. Adler and Ms. Topelsohn have increased since the litigation concerning the arbitration began. Pet'r's Br. at 28; Adler Cert., ¶ 17. Specifically, Mr. Adler's hourly rate was $575 in 2014 and 2015, and increased in 2016 to $595. *Id.* Similarly, Ms. Topelsohn's hourly rate which was $425 in 2014 and 2015 increased to $450 in 2016. *Id.* The rates of the Mandelbaum associates are: $150 for Summer Associate Joshua Gorsky, $275 for Rachita Bhatt and Joseph LoGalbo, and $300 for Jennifer Presti. Pet'r's Br. at 15-17. The rates of the Mandelbaum paralegals are: $100 for Christina Pazdzierski and Mike Papa, and $225 for Donna Forbes, Marion Coffey, Clara Viera, Candace Ward and Donna Nieglos. *Id.* The rates for the attorneys and paralegal from GGFCM are: $640 for Brian L. Davidoff, Esq., $325 for James Behrens, Esq., and $175 for Kaitlin Woodson, a paralegal. *Id.* at 17.

The Court concludes that Petitioner's attorneys have submitted sufficient evidence to establish the reasonableness of the rates requested. First, Respondents have not challenged the hourly rate or otherwise argued that it is unreasonably high. Second, in 2014, the arbitrator, in issuing his Summary Award, determined that the hourly rates charged by Mandelbaum with respect to the services the firm provided in the arbitration were reasonable. Summary Award, Apr. 2, 2014.

The Court also is satisfied that the rates are commensurate with counsel's experience and skill levels. Mr. Adler's certification establishes that his customary hourly rate is $595 per hour. Adler Cert., ¶ 66. He claims this rate is consistent with the accepted hourly rate of qualified attorneys in the area of commercial litigation. *Id.* ¶ 61. Mr. Adler has thirty-five years of experience as a member of the New Jersey bar specializing in the field of employment law before trial courts in both federal and state court, has been published on various employment and

litigation topics, has been a Master in the Sidney Reitman Employment Law Inn of Court, and was an initial member of the Justice Robert Clifford American Inn of Court. *Id.* ¶¶ 61-63, 65.

Mr. Adler has submitted an affidavit from Robert Dowd, Esq., who has more than thirty years of litigation experience in New Jersey, Mr. Dowd represents that Mr. Adler's current hourly rate of $595 per hour is a reasonable rate for someone of Mr. Adler's experience and expertise, and well within the range of prevailing rates charged by attorneys with comparable skill and experience in New Jersey. Certification of Robert Dowd, Esq. ("Dowd Cert."), D.E. 57-5, Feb. 1, 2017, ¶¶ 3, 5. In fact, Mr. Dowd indicates that this is the same rate Mr. Adler billed in 2012, before leaving the Cole Schotz firm. *Id.* ¶ 5.

Ms. Topelsohn, Esq. also has submitted a certification in support of Asta's motion for attorneys' fees, establishing that she is a partner at Mandelbaum and a member of the firm's "Commercial Litigation, Privacy, Cybersecurity & Information Management, and Labor and Employment practice groups." Topelsohn Cert., ¶ 1. Ms. Topelsohn has been practicing law in New Jersey for twenty-five years, and is admitted to practice law in the state courts of both New York and New Jersey, as well as the United States District Courts for the Southern and Eastern Districts of New York. *Id.* ¶ 6. Before joining Mandelbaum, Ms. Topelsohn acted as General Counsel and COO for a litigation support services company, was Of Counsel at Post, Polak, Counsel at Kane Kessler, P.C. and an associate at Townley & Updike and Kaye Scholer, LLP. *Id.* ¶¶ 9, 10. She is a frequent lecturer on technology matters. *Id.* ¶ 11.

Moreover, a review of relevant case law reveals that the rates sought by counsel are indeed reasonable for this District. *See Shelton v. Restaurant.com Inc.*, Civil Action No. 10-824

(MAS), 2016 WL 7394025 (D.N.J. Dec. 21, 2016) (finding that, in lengthy and protracted

commercial litigation, $600 hourly rate is reasonable for an attorney with over thirty years'

experience, $400 is reasonable for an attorney with approximately sixteen years of experience,

and $250 is reasonable for an attorney with less than six years of experience); *Federal Trade

Commission v. Circa Direct, LLC*, 912 F. Supp. 2d 165, 174 (D.N.J. 2012) (in a commercial

federal trade litigation case litigated in southern New Jersey, $400 was reasonable for attorneys

with 15 years of experience, $275 was reasonable for an associate with four years' experience,

and $150 was reasonable for a summer associate); *Warren Distributing Co. v. InBEV USA, LLC*,

Civil Action No. 07-1053 (RBK), 2011 WL 770005 (D.N.J. Feb. 28, 2011) (finding $750 to be a

reasonable rate for a highly skilled and experienced attorney in a commercial litigation case).

Accordingly, the Court concludes that Asta's counsel have adequately established that their rates

are reasonable.   Nothing in the record suggests otherwise, and Mr. Neal has not argued

otherwise.

The certifications of Mr. Dowd, Mr. Adler and Ms. Topelsohn also establish the rates of

Mandelbaum's associates and paralegals are reasonable.   Dowd Cert., ¶ 5; Reply Certification

of Lauren X. Topelsohn, D.E. 62-3, March 15, 2017, ¶¶ 20, 22.   Specifically, Mr. Dowd

certifies that:

> [H]aving worked at firms similar or larger in size than Mandelbaum, and
> based upon discussions I've had with other attorneys at various firms in
> New Jersey, I am familiar with the hourly rates typically charged in this
> market. In my opinion, the hourly rates charged by Mandelbaum in
> these related matters are reasonable …. It is also my opinion that the
> hourly rates charged by Mandelbaum for the services of partner Lauren
> X. Topelsohn, Esq. (B.A.-Barnard College, M.A.-Columbia University
> and J.D.-Northwestern School of Law) and partner Stuart Gold (B.A.-
> University of Pennsylvania and J.D.-Cornell Law School) for the little

amount of time he billed are reasonable based upon their education and
years of practice.

Dowd Cert., ¶ 5. As with counsel's rates, Respondents do not argue otherwise.

As for the rates of the attorneys with GGFCM, a firm which operates out of Los Angeles,

the invoices demonstrate that the rates sought are comparable to those of Mandelbaum. Pet'r's

Br. at 28. Specifically, $640 is the hourly rate sought by the most senior attorney on the case,

Brian L. Davidoff, who is an attorney with more than thirty years of experience, including

considerable trial experience. His resume suggests that he also has published numerous articles

in his field. Asta seeks $325 an hour is sought for James Behrens, an associate specializing in

bankruptcy and restructuring law, and $175 per hour for Kaitlin Woodson, a paralegal. *Id.*

Additionally, the rates charged by GGFCM are reasonable for attorneys and paralegals

located within the Central District of California. See *Perfect 10, Inc. v. Giganews, Inc.*, Civil

Action No. 11-7098, 2015 WL 1746484 (C.D. Ca. Mar. 24, 2015) (in commercial litigation,

court found that rates between $825 and $930 were reasonable for an attorney with 29 years of

experience, rate of $450 for a second year associate was reasonable and rate of $240 for a

paralegal with five years of experience was reasonable). Accordingly, the Court accepts that

requested rates as reasonable for purposes of the lodestar calculation.

### b. Time Reasonably Expended

The second step in this analysis requires the Court to determine whether the time for

which counsel seeks the award was reasonable. *See Blakely*, 2 F. Supp. 2d at 604. A court may

reject fees for any hours that are "excessive, redundant, or otherwise unnecessary." *Id.* That is,

in order to recover fees, an attorney's work must be "useful and of a type ordinarily necessary to

secure the final result obtained from the litigation." *Penn. v. Del. Valley Citizens' Council for*

24

*Clean Air*, 478 U.S. 546, 561 (1986) (internal quotations omitted). Regarding duplicative work, courts may reduce fee awards "only if the attorneys are <u>unreasonably</u> doing the <u>same</u> work." *Rode*, 892 F.2d at 1187 (emphasis in original) (quoting <u>Jean v. Nelson</u>, 863 F.2d 759, 773 (11th Cir. 1988)). If the prevailing party demonstrates that the requested hours are reasonable, the court may reduce fee awards only upon the adverse party's objections. *See Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989).

Here, the Court has reviewed the certification of Mr. Adler, along with the exhibits attached thereto. D.E. 57-2 to D.E. 57-3. The certification asserts that the fees sought in the amount of $741,246.57 reflects a total of 1,862.10 hours. The Court has carefully and thoroughly reviewed all of the invoices and the amount sought per each of the six actions. The entries for Asta's counsel on each day are sufficiently specific for this Court to make a determination as to the reasonableness of hours expended and time allotted for the tasks performed. The Court finds that a close review of all of the invoices submitted reveals that Asta's counsel have not billed more than one matter for identical work. Nor has Mr. Neal contested the hours billed on that, or any other, basis. Accordingly, no two actions are billed for the same work and the services performed, as reflected on each of the invoices, are for each respective action alone. Having examined the itemized invoices submitted by Mr. Adler, the Court is satisfied that the work described in the entries do not appear to be "excessive, redundant, or otherwise unnecessary," and that the amount of hours of work sought is reasonable in light of the nature of the six actions and the services rendered over the course of several years. *See Interfaith Cmty Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 711 (3d Cir. 2005).

However, the Court will reduce the attorneys' fee award for those listed entries on Asta's invoices that are from January 31, 2014 or earlier.   The Summary Award and Confidential Award, as confirmed by Judge McNulty, is clear that Petitioner is only entitled to reasonable attorneys' fees after January 31, 2014.   *See* Adler Cert.*,* Exh. 4, 6, 9, D.E. 57-3.[15]   Accordingly, Petitioner's attorneys' fee request of $741,201.57 will be reduced by $35,127.50, the amount billed for fees incurred on January 31, 2014 or earlier, plus a further reduction of $11,900 as discussed above for the unsuccessful motions to seal, for a total fee award of $694,174.07.

### c.   Lodestar Calculation

For the reasons set forth above, the lodestar is:

| MANDELBAUM: Arbitration | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Hourly Rate** | **Total** |
| S. Gold, Esq. | 17.2 | $450 | $7,740.00 |
| S. Adler, Esq. | 25.1 | $575 | $4,473.57 (reflects a $9,958.93 adjustment)[16] |
| L. Topelsohn, Esq. | 93.9 | $425 | $37,145.00 (reflects a $2,762.50 adjustment) |
| C. Pazdzierski | 0.4 | $100 | $40.00 |

---

[15]   The entire first page of Exhibits 6 and 9 are for services performed before January 31, 2014, as are the first entry on the first page of Exhibit 4, the first 6 entries on page three of Exhibit 6 and the first entry on page three of Exhibit 9.   Adler Cert., Exhs. 4, 6, 9, D.E. 57-3.

[16]   The adjustments listed in these tables were made by Asta's counsel because they realized "upon reviewing ASTA's invoices for purposes of this application, that in a few instances, time billed should have been applied to a different matter, or ASTA paid Mandelbaum for a disbursement as well as a vendor directly, and thus that amount was credited against a later Mandelbaum invoice."   Adler Cert., ¶ 48.   The Court includes the adjustments in the lodestar calculation so that it is clear why in some instances the number of hours multiplied by the hourly rate does not reach the expected total.

| D. Forbes | 1.5 | $225 | $337.50 |
| J. LoGalbo, Esq. | 2.1 | $275 | $577.50 |
| R. Bhatt, Esq. | 2.3 | $275 | $632.50 |
| C. Ward | 1.8 | $225 | $405.00 |
| **Totals:** | **144.3** | | **$51,351.07** |

| **MANDELBAUM: DJ Action** | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Hourly Rate** | **Total** |
| S. Adler, Esq. | 75.6 | $575 | $43,470.00 |
| S. Adler, Esq. | 5 | $595 | $2,975.00 |
| L. Topelsohn, Esq. | 989.1 | $425 | $416,922.50 (reflects a $3,442.50 adjustment) |
| L. Topelsohn, Esq. | 32 | $450 | $14,400.00 |
| S. Gold, Esq. | 1.8 | $450 | $810.00 |
| D. Forbes | 1.8 | $225 | $405.00 |
| J. Presti, Esq. | 11.3 | $300 | $3,390.00 |
| J. Gorsky | 11.4 | $150 | $1,710.00 |
| M. Papa | 9 | $100 | $900.00 |
| J. LoGalbo, Esq. | 27.2 | $275 | $7,480.00 |
| C. Ward | 16.3 | $225 | $3,667.50 |
| R. Bhatt, Esq. | 6 | $275 | $1,650.00 |
| M. Coffey | 11.5 | $60 | $690.00 |

| | | | |
|---|---|---|---|
| M. Coffey | 8.5 | $225 | $1,912.50 |
| **Totals:** | **1234.50** | | **$500,382.50** |

| **MANDELBAUM: Coyne I & II** | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Hourly Rate** | **Total** |
| S. Gold, Esq. | 28.7 | $450 | $12,915.00 |
| L. Topelsohn, Esq. | 72.1 | $425 | $30,642.50 |
| L. Topelsohn, Esq. | 7.5 | $450 | $3,375.00 |
| S. Adler, Esq. | 13.6 | $575 | $7,820.00 |
| C. Viera | 3.5 | $225 | $0.00 (reflects a $787.50 adjustment) |
| **Totals:** | **125.4** | | **$54,752.50** |

| **MANDELBAUM: Present Action** | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Hourly Rate** | **Total** |
| S. Adler, Esq. | 4.9 | $575 | $2,817.50 |
| S. Adler, Esq. | 1.5 | $595 | $892.50 |
| L. Topelsohn, Esq. | 82.5 | $425 | $35,062.50 |
| L. Topelsohn, Esq. | 27.2 | $450 | $12,240.00 |
| D. Nieglos | 0.2 | $225 | $45.00 |
| **Totals:** | **116.3** | | **$51,057.50** |

| MANDELBAUM: Vacate Action | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Hourly Rate** | **Total** |
| S. Adler, Esq. | 2.1 | $575 | $1,207.50 |
| L. Topelsohn, Esq. | 20.1 | $425 | $8,542.50 |
| L. Topelsohn, Esq. | 1.6 | $450 | $720.00 |
| **Totals:** | **23.8** | | **$10,470.00** |

| GGFCM: Coyne I & Coyne II | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Hourly Rate** | **Total** |
| JC Behrens, Esq. | 53.1 | $325 | $17,257.50 |
| B. Davidoff, Esq. | 13.2 | $640 | $8,448.00 |
| K. Woodson | 2.6 | $175 | $455.00 |
| **Totals:** | **68.9** | | **$26,160.50** |

ii. **Costs**

Petitioner is entitled to recoup its costs expended in support of the litigation in the six

actions based on the arbitrator's Confidential Award and Judge McNulty's Opinion and Order

confirming that award. Specifically, the arbitrator stated, "Claimant having prevailed on its

claims, and Respondents having been found liable for contractual, fraud and statutory violations

as set forth herein, some of which permit the award of "costs" to the prevailing party, I therefore

assess all costs of this arbitration and all arbitrator's compensation to be paid by Respondents,

jointly and severally, to the extent not already paid by them*." Neal v. Asta Funding, Inc.*, Civil

Action No. 13-6981 (KM) (DJ Action), Motion for Summary Judgment, Exh. 51, D.E. 151-1, Confidential Award, at 23.   Here, Petitioner seeks $63,183.14 for transcription fees, expert witness fees, and Westlaw Legal Research fees.   *See* Pet'r's Br., D.E. 57, at 17; *see also* Adler Cert., ¶ 51.

At the arbitrator's request, Veritext provided transcription services throughout the six Arbitration hearing days.   *See Id.* ¶ 56.   Veritext's fee of $9,115.78 was not included in the sum awarded in the Arbitration Award.   *Id.*

Asta hired two expert witnesses for the Arbitration, Palisades and Sylint.   *Id.* ¶ 52. Craig Guarente, a principal at Palisades, is an Oracle licensing expert.   *Id.*   Asta retained Mr. Guarente to review evidence and to testify at the hearing concerning fraudulent conduct committed by the Respondents relating to Respondents' sale of bogus Oracle software license and fictional support services.   *Id.*   The arbitrator found Mr. Guarente's testimony "clear and convincing" and held Respondents "jointly and severally liable for the damages related to the fraud, including attorneys' fees and costs."   *Id.*   John Jorgensen, a principal at Sylint, is a computer forensic and investigative expert.   *Id.*   Asta hired Mr. Jorgensen to testify and review evidence at the hearing relating to the fictional computer monitoring services.   *Id.*   In total, Asta paid $40,109.27 for Palisades' and Sylint's services.   *Id.*   Asta paid Palisades $7,875 and Sylint $30,458, and reimbursed Mr. Jorgensen $1,776.27 in travel expenses.   *Id.*

Mandelbaum has two sources of Westlaw Fees in their submitted invoices. *See* Adler Cert., ¶ 57.   Ms. Topelsohn pays a flat monthly fee which is then charged to her MasterCard account.   *See* Topelsohn Cert., ¶ 17.   Each month Ms. Topelsohn divides the flat monthly rate by the number of searches conducted to determine a "per search" fee.   *Id.*   She then allocates

the monthly fee amongst the clients she has performed research based on the number of searches. Mandelbaum then invoices each client the appropriate amount for purposes of reimbursement. *Id.* The remaining Westlaw fees relate to the Westlaw account for the Mandelbaum firm, which like Ms. Topelsohn, is based on a flat monthly rate and then is allocated among clients for services provided. *Id.* Asta seeks to recover a total of $13,958.09 in Westlaw Fees. *Id.*

The court concludes the fees requested by Asta are reasonably related to the litigation in this matter and were properly documented. They are the type of services for which costs can generally be obtained. *See, e.g., Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) (finding that expert fees, electronic research expenses and court reporter expenses are all compensable as costs); *see also Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d. 737, 760-61 (N.D. Ind. 2008) (same). Accordingly, the Court will not reduce the amount of costs sought, and instead, awards Asta $63,183.14 in costs.

V. **CONCLUSION**

For the reasons set forth above, the Court grants the motion of Asta Funding for Attorneys' Fees and Costs [D.E. 57] and awards Counsel $694,174.07 in fees and $63,183.14 in costs. The Court also denies Respondent's Motion to Strike Petitioner's Motion for Attorney

Fees [D.E. 61].    An appropriate Order will accompany this Opinion.


**Michael A. Hammer**
**UNITED STATES MAGISTRATE JUDGE**


Date: September 29, 2017